```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

    BRITTANY EARLING,

                        Plaintiff,
                                    Civil No. 15-117(NLH)
        v.
                                    **OPINION**
    COMMISSIONER OF SOCIAL
    SECURITY,
                        Defendant.

**APPEARANCES:**

JASON LANELL THOMPSON
LEVENTHAL, SUTTON & GORNSTEIN, ESQS.
3800 HORIZON BLVD.
SUITE 101
TREVOSE, PA 19053-4947
    On behalf of Plaintiff

MATTHEW JARED LITTMAN
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
PHILADELPHIA, PA 19147
    On behalf of Defendant

**HILLMAN**, District Judge

     This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income ("Social Security benefits") under Title II and Title XVI of the Social Security Act.  42 U.S.C. § 401, et seq.  The issue

before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, November 3, 2010.  For the reasons stated below, this Court will affirm that decision.

I.      BACKGROUND AND PROCEDURAL HISTORY

On January 12, 2011, Plaintiff filed an application for disability benefits, claiming that since November 3, 2010, she is disabled and unable to work due to migraines, attention-deficit hyperactivity disorder, generalized anxiety disorder, depressive disorder, bipolar disorder, post-traumatic stress disorder, adjustment disorder with mixed anxiety and depressed mood, personality disorder, alcohol dependence, and polysubstance dependence.

After a hearing before an ALJ, it was determined that Plaintiff was not disabled, as she retained the ability to perform unskilled work with certain restrictions.  Plaintiff appealed the decision.  The Appeals Council denied Plaintiff's request for review, thus rendering the ALJ's decision as final. Plaintiff now seeks this Court's review.

**II. DISCUSSION**

   **A.   Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

3

1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is

4

> supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable

5

physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

    The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

    1.    If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

    2.    If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

    3.    If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the

6

>       claimant will be found "disabled."
>
> 4.    If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."
>
> 5.    Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.  See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v.

Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

In this case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (Step One).  The ALJ next found that Plaintiff's migraines, attention-deficit hyperactivity disorder, generalized anxiety disorder, depressive disorder, bipolar disorder, post-traumatic stress disorder, adjustment disorder with mixed anxiety and depressed mood, personality disorder, alcohol dependence, and polysubstance dependence were severe (Step Two). The ALJ then found that Plaintiff's substance abuse and periods of decompensation met the criteria of listings 12.04 and 12.09, and that if Plaintiff stopped the substance abuse, her other impairments would still be severe.  The other impairments, however, did not meet the medical equivalence criteria of listings 12.04, 12.06, or 12.09 (Step Three).  At Step Four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform jobs at the unskilled level, with certain nonexertional limitations, such as a night cleaner and laundry packer, which jobs are in significant numbers in the national economy (Step Five).

Plaintiff presents four arguments as to why the ALJ

8

decision should be reversed: (1) the ALJ did not consider her Title II Disabled Adult Child (DAC) application for the time period of November 4, 2011 through April 17, 2011, the day before her 22nd birthday; (2) the ALJ erred in finding that substance abuse was a contributing factor material to the disability determination; (3) the ALJ erred by inconsistently relying upon consultative examiner Gregory Coleman, Psy.D; and (4) the ALJ improperly considered Plaintiff's failure to comply with treatment.

Contrary to Plaintiff's arguments, the Court can find no error in the ALJ's decision. In a detailed and comprehensive decision, the ALJ properly supported his conclusion that Plaintiff's impairments were not totally disabling, as demonstrated by the pertinent medical and non-medical evidence that showed her ability to function when she stopped drinking alcohol and using drugs. The conclusion of the ALJ's decision succinctly explains his findings, which were detailed in the substantive portion of his decision:

> In sum, if the claimant stopped the substance use, the above residual functional capacity assessment is supported by the objective medical evidence, the medical treatment history, the claimant's noncompliance and failure to pursue additional treatment, the opinion evidence discussed above, and the claimant's activities of daily living during periods of remission. The objective evidence during periods when the claimant was not abusing substances is not

9

>overly impressive.  In fact, upon discharge from a
>hospitalization, a mental status examination shows a
>pleasant mood and full affect with improved insight and
>judgment, intact memory, and no looseness of association or
>flight of ideas (Exhibit B-6F).  In addition, treatment
>records show that the claimant struggled with medication
>compliance and was terminated from counseling after missing
>three of her group meetings; however, during periods of
>compliance, the claimant reported that medication and
>counseling were somewhat effective in managing her mental
>symptoms (Exhibits B-lF, B-3F, B-7F, B-8F, and Testimony).
>Nonetheless, the undersigned has given some weight to the
>claimant's allegations and found the ability to perform
>simple, routine, repetitive tasks on a sustained basis.  As
>for the claimant's migraine headaches, the record contains
>infrequent complaints, normal objective findings, and
>minimal treatment required.  For instance, the claimant did
>not testify to any symptoms related to this impairment and
>physical examinations show no sensory deficits with no
>motor weakness (Exhibits B-8F and B-9F).  Even still, this
>impairment has been considered when assessing the residual
>functional capacity and appropriate limitations including
>no exposure to flashing lights or lights brighter than that
>typically found in an indoor work environment were
>included.  The undersigned also considered the claimant's
>allegations of drowsiness caused by her medications and
>limited her to no exposure to hazards such as heights and
>moving machinery.  Finally, the claimant's activities of
>daily living support the limitations reflected in the
>residual functional capacity.  In this regard, the claimant
>reported that she prepares meals, washes dishes, does
>laundry, takes out the trash, and has no problems
>performing her personal care and grooming.  She also
>indicated that she drives daily, attended classes at the
>Reading Community College, goes shopping, and attends
>twelve-step meetings and recovery events (Exhibit B-4E and
>Testimony).  Accordingly, the undersigned has determined
>that the claimant's impairments and the restrictions caused
>by them would not prevent her from performing the residual
>functional capacity as defined above.

(R. at 11, Docket No. 8-2 at 38.)

Thus, with regard to Plaintiff's argument that the ALJ

10

erred in finding that substance abuse was a contributing factor material to the disability determination, the Court disagrees. In cases involving drug or alcohol addiction, "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The Social Security Administration advises adjudicators assessing whether an individual's substance abuse problems were a factor material to the disability determination that "[t]he most useful evidence ... is that relating to a period when the individual was not using drugs/alcohol." Social Security Administration, Questions and Answers Concerning DAA from the 07/02/96 Teleconference, No. EM-96200 (Aug. 30, 1996).

In this case, the ALJ detailed medical evidence and Plaintiff's own testimony regarding her ability to function when she was under the influence and when she was sober. The differences in her abilities and mental state when she is sober and when she is not sober are significant. Even though Plaintiff argues that her substance abuse cannot be detangled from her mental impairments, that the substance abuse is a form of self-medication of her mental impairments, and that

11

hospitalization and therapy sessions were for both substance abuse and mental disorders, and therefore her mental disorders are severe and disabling regardless of her substance and alcohol abuse, the record supports the ALJ's view.  Moreover, the ALJ did not find that Plaintiff did not suffer from any impairments when she was sober, but rather that any totally disabling aspect of Plaintiff's impairments came from the substance abuse in addition to the mental disorders.

The ALJ recognized that Plaintiff suffered from limitations due to her impairments, and the ALJ even credited Plaintiff's conditions that were not fully supported by the medical evidence, such as her migraines and medication side effects. The whole of Plaintiff's impairments were addressed in the limitations imposed by the ALJ on her ability to perform unskilled work, including restrictions on light, noise, heights, change in duties and settings, and interaction with people. Therefore, the ALJ did not err in his consideration of the effect of Plaintiff's substance abuse on her ability to work.

Plaintiff also contends that the ALJ erred by inconsistently relying upon consultative examiner Gregory Coleman, Psy.D.  In Step Three, the ALJ afforded Dr. Coleman's report more weight than other consultative reports.  The ALJ

12

explained,

> As for the opinion evidence, the State agency psychological consultant determined that the claimant's impairments do not preclude her from performing the basic demands of full-time work in a stable environment (Exhibit B-2A). In addition, upon discharge from the rehabilitation facilities, the claimant was released to return to school and work as well as full activity and usual duties (Exhibits B-7F and B-8F). These opinions are given less weight than that of Dr. Coleman, PsyD, a consultative examiner, who indicated that the claimant has marked limitation in making simple work-related decisions, marked limitation in responding appropriately to work pressures, and marked limitation in responding appropriately to changes in a routine work setting (Exhibit B-3F).

(Docket No. 8-2 at 32.)

In the ALJ's residual functional capacity analysis, while assessing Plaintiff's abilities if she stopped using drugs and alcohol, the ALJ afforded Dr. Coleman's report less weight than the state consultative psychologist. The ALJ explained,

> As for the opinion evidence if the claimant stopped the substance use, Dr. Coleman, PsyD, a consultative examiner indicated that the claimant has marked limitation in making simple work-related decisions, marked limitation in responding appropriately to work pressures, and marked limitation in responding appropriately to changes in a routine work setting (Exhibit B-3F). This opinion is given less weight than the State agency psychological consultant who determined that the claimant's impairments do not preclude her from performing the basic demands of full-time work in a stable environment (Exhibit B-2A).

(Docket No. 8-2 at 37.)

Although the ALJ appears to contradict himself, the context in which the ALJ uses Dr. Coleman's report demonstrates why Dr.

13

Coleman's report is appropriate to afford greater weight at Step Three and lesser weight at Step Four.

At Step Three, the ALJ was tasked with determining whether Plaintiff's mental impairments met the listing requirements for diminished interest in activities, feelings of worthlessness, decreased energy, difficulty concentrating, and suicidal ideation, as well as showing periods of decompensation for extended duration.  The ALJ found Dr. Coleman's report to be "supported by the clinical signs when the claimant is abusing substances to the extent requiring inpatient treatment, including a depressed mood, dysphoric affect, a blunted affect, intermittent eye contact, and limited insight and judgment.  It is also more consistent with her treatment history of requiring numerous inpatient stays due to substance abuse." (Docket No. 8-2 at 32.)  At Step Four, when considering Plaintiff's ability to work, the ALJ found that Dr. Coleman's report was afforded less weight than the state consultative psychologist because that report was "more supported by the clinical signs including a euthymic mood, full affect, intact cognition, and no suicidal or homicidal ideation when the claimant is not engaging in substance abuse to the extent she requires hospitalization (Exhibits B-8F and B-9F)."  (Docket No. 8-2 at 37.)

14

In short, the ALJ found that Dr. Coleman's report was supported by the evidence as it pertained to the effect of Plaintiff's substance abuse on her mental state and episodes of decompensation, but Dr. Coleman's report was not supported by the evidence for the periods of time when Plaintiff was not using alcohol or drugs. The Court does not find any error by the ALJ in this regard.

Plaintiff's next argument for reversal of the ALJ's decision is similarly unavailing. Plaintiff claims that the ALJ improperly relied upon Plaintiff's failure to comply with treatment and medication as a factor in finding her able to work. Under the Regulations, a denial of benefits for failure to follow a prescribed treatment plan may only be issued after the ALJ finds a disabling impairment that precludes engaging in any substantial activity. Vega v. Comm'r of Soc. Sec., 358 F. App'x 372, 375 (3d Cir. 2009) (citing SSR 82-59, "Individuals with a disabling impairment which is amenable to treatment that could be expected to restore their ability to work must follow the prescribed treatment to be found under a disability, unless there is a justifiable cause for the failure to follow such treatment."). In other words, in order to deny benefits based on non-compliance with a treatment plan, an ALJ must first

15

determine that the plaintiff suffers from a disabling impairment precluding any ability to work, and, second, that plaintiff following the prescribed treatment for that impairment would not preclude plaintiff from the ability to work.

No such analysis under SSR 82-59 was performed by the ALJ in this case because his decision was not based on a finding that Plaintiff's disabilities were a result of a failure to comply with a treatment plan, or that compliance with a treatment plan would render Plaintiff not disabled.  Instead, Plaintiff's treatment, and then lack of treatment, was a factor in the ALJ's assessment of Plaintiff's condition while sober and while under the influence.  His consideration of her noncompliance with treatment was also a factor in gauging Plaintiff's credibility.[1]  The consideration of Plaintiff's treatment, and lack of treatment, in these two contexts is appropriate.[2]

---

[1] In making a credibility determination as part of the evaluation of a claimant's symptoms, an adjudicator may consider the claimant less credible "if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96–7p.

[2] It is important to note that "it is a treating source who must prescribe treatment in order for the issue of 'failure' to arise," SSR 82-59, and Plaintiff has not provided any medical records of a treating physician.

16

Finally, with regard to Plaintiff's argument that the ALJ failed to consider her Title II Disabled Adult Child (DAC) application for the time period of November 4, 2011 through April 17, 2011, the day before her 22nd birthday, the Court is not convinced that Plaintiff affirmatively advanced a Title II DAC claim along with her claim for benefits beginning November 3, 2010.  Even if Plaintiff did, the evidence in the record encompasses those six months, as well as a year before and two years beyond.  There is nothing in the record within those six months that would change the analysis provided by the ALJ with respect to Plaintiff's disability onset date of November 3, 2010.

**III. Conclusion**

For the reasons expressed above, the ALJ's determination that Plaintiff is not totally disabled as of November 3, 2010, is supported by substantial evidence.  The decision of the ALJ is affirmed.  An accompanying Order will be issued.


Date: March 14, 2016              s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.